# United States Court of Appeals

## For the First Circuit

No. 07-2110

ALDEVINO MANUEL LEAL SANTOS,

Petitioner, Appellant,

v.

MICHAEL B. MUKASEY,* Attorney General,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Lipez and Howard,
Circuit Judges.

Cheryl J. Sturm on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Barry J. Pettinato, Assistant Director, and Jesse M. Bless,
Attorney, Office of Immigration Litigation, Civil Division, United
States Department of Justice, on brief for respondent.

February 13, 2008

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzales.

**HOWARD**, <u>Circuit Judge</u>.  In a removal proceeding before an Immigration Judge ("IJ"), petitioner Aldevino Manuel Leal Santos ("Santos") argued as a defense that he met the requirements for derivative citizenship because his mother was physically present in the United States for the requisite time prior to his birth.  That argument was rejected by the IJ and by the Board of Immigration Appeals ("BIA").  The Third Circuit Court of Appeals transferred the case, for reasons that will become clear later, to the District of Massachusetts for fact-finding on Santos's derivative citizenship claim.  The district court found that his mother was not present for the requisite time, and denied his claim of derivative citizenship.  Santos now appeals that decision.  We affirm.

## I.

Santos was born in 1957 in the Azores Islands, Portugal.  He was convicted in the U.S. District Court for the district of Massachusetts in 1997 of cocaine distribution, money laundering, and conspiracy charges, <u>United States</u> v. <u>Santos</u>, No. 96-cr-10231 (D. Mass. Oct. 29, 2001), and subsequently was charged with removal under 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i).  During his removal proceedings, Santos argued that he satisfied the requirements for

derivative citizenship under 8 U.S.C. § 1401(a), as that statute read in 1957.[1]

Under the statute, derivative citizenship may be conferred upon a person born outside of the United States if the applicant has at least one parent who is a United States citizen, and the parent was present in the United States for at least ten years prior to the applicant's birth. At least five of those years must have been after the parent's fourteenth birthday.

Santos claims derivative citizenship through his mother, Francelina Augusta Leal Santos ("Francelina"). While Santos's removal proceedings were pending, the United States Citizenship and Immigration Services determined Francelina to be a United States citizen.[2] In order for Santos to be eligible for derivative citizenship under 8 U.S.C. § 1401(a) (1957), Francelina must have spent at least ten years in the United States prior to Santos's birth in 1957. Moreover, five of those years must have been after Francelina's fourteenth birthday in January 1941.

In statements to immigration officials between 2003 and 2005, Francelina indicated that she came to the United States first

_____

[1]When making derivative citizenship determinations under section 1401(a), courts "look to the applicable law in effect at the time of appellant's birth". Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001).

[2]Francelina was born in the Azores in January 1927, but her mother, Aurora Augusta Leal (Santos's grandmother), was born in the United States and was a citizen.

-3-

in 1928, returning to the Azores in 1934.  She arrived in the United States again in 1941, returning to the Azores in 1947.  Her grandson John Mello, an attorney who is Santos's nephew, testified before the district court that Francelina had described to him her childhood years in the United States using the same time frames.  However, while the IJ said that Francelina was not "evasive or misleading," her testimony was "distraught, confused and distressed" in that she could not remember in what years her children were born, and that she incorrectly stated that she herself was born in the United States.[3]

Francelina's 1962 visa application to the United States was also introduced as evidence.  In response to the question in the visa application, "Since my sixteenth birthday my places of residence for six months or more have been . . .", Francelina listed only two addresses, both in the Azores, for the years 1943 to 1962.  Thus, Francelina's and Mello's more recent statements that she returned to the Azores in 1947 are inconsistent with the response in her 1962 visa application stating that she lived in the Azores from 1943 to 1962.

The IJ in Santos's removal proceedings concluded that Santos failed to prove that he satisfied the requirements for derivative citizenship.  The BIA affirmed this ruling; Santos

_____

[3]Francelina was unable to testify before the district court due to ill health.

petitioned the Third Circuit Court of Appeals for review. In reviewing the BIA decision, the Third Circuit found that there existed "a genuine issue of material fact" as to whether Santos met the requirements for derivative citizenship and transferred the case to the District of Massachusetts for fact-finding. This procedure was pursuant to 8 U.S.C. § 1252(b)(5)(B), which provides for a transfer to the "judicial district in which the petitioner resides" for further fact-finding. As Santos, previously incarcerated in Pennsylvania, had already been deported, the Third Circuit elected to transfer the case to the District of Massachusetts for the convenience of Francelina, a Massachusetts resident.[4]

In July 2007, the district court held an evidentiary hearing on the factual question of whether Francelina was physically present in the United States for the requisite amount of time prior to Santos's birth. Leal Santos v. Gonzales, 495 F. Supp. 2d 180 (D. Mass. 2007). The district court concluded that although she had come to the United States twice as a child, she had not stayed long enough the second time, after attaining the age of fourteen. Specifically, the district court found that

---

[4]No issue has been raised in this appeal about either the propriety of the transfer or whether this is the appropriate court to review the district court's findings. See 28 U.S.C. § 1294(1) (appeals from reviewable district court decisions shall be in the court of appeals for the circuit embracing the district.)

Francelina was in the United States from 1928 to 1934, and from 1941 to 1943.  Santos now appeals to this court.

## II.

We review the district court's legal conclusions de novo. Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 138 (1st Cir. 2006).  We review the factual determination of the district court as to Santos's eligibility for derivative citizenship under a clearly erroneous standard.  Id.

Santos argues that the district court incorrectly placed the burden of proof on him to show that he met the eligibility requirements for derivative citizenship.  In addition, he contends that, even if the district court was correct in assigning the burden of proof to him, the court erred in its interpretation of the evidence.[5]

First, Santos argues that the government bears the burden of proving alienage in removal proceedings.  8 C.F.R. § 1240.8(c) (2007).  This is true; however, evidence that the person in removal proceedings was born abroad meets that burden unless the person can prove, by a fair preponderance of the evidence, that he possesses derivative citizenship.  See Batista v. Ashcroft, 270 F.3d 8, 15 (1st Cir. 2001); Matter of Tijerina-Villarreal, 13 I. & N. Dec. 327, 330-31 (BIA 1969); see also Scales v. INS, 232 F.3d 1159, 1163

---

[5]Santos made several additional arguments before the IJ and BIA, which he did not raise before this court and has thus waived.

(9th Cir. 2000). Thus, we agree with the district court that it was Santos's burden to prove by a preponderance of the evidence that Francelina lived in the United States from 1941 until at least 1946, in addition to spending five years in the United States prior to age fourteen.

Santos next argues that he met that burden, as the evidence shows, in his view, that Francelina remained in the United States until 1947. He contends that the district court came to the wrong conclusion based on the evidence before it.

In challenging the district court's conclusion, Santos argues that the testimony of John Mello corroborated Francelina's version of when she was in the United States. Although some of Francelina's statements may have demonstrated confusion, he argues that Mello's credible testimony wholly supports her account.

Santos also argues that the district court gave undue weight to Francelina's 1962 visa application. As Francelina is illiterate in both English and Portugese, he argues, she did not prepare the application herself and it may not be accurate. Further, he argues, the 1962 visa application is ambiguously worded. The visa application requires the applicant to list "places of residence" since the applicant's sixteenth birthday. A minor's "residence," he argues, can be understood as the home of one's parents. Here, he suggests, Francelina was a minor between the years 1943 and 1946, and may have answered the question to

reflect where her parents were living at this time rather than where she herself was living.[6]

While Santos's interpretation of the evidence is admittedly plausible, the view adopted by the district court -- Francelina left the United States in 1943 -- is also plausible. Due to her inability to recall dates, the district court found Francelina's testimony before the IJ unreliable with respect to the precise years she had been in the United States as a child. In contrast, the district court did credit Francelina's statements in the visa application, which was completed several decades closer to the material time periods and, as the district court noted, "at a time when the stakes were not yet known." We cannot find the district court's choice between two plausible interpretations of the facts to be clearly erroneous. United States v. Weidul, 325 F.3d 50, 53 (1st Cir. 2003).

**Affirmed**.

_____

[6]Santos makes a final attack on the district court's conclusion with an appeal to historical context. He suggests that it is unlikely that Francelina would have crossed the Atlantic Ocean in 1943, during World War II, to return to the Azores. In response, we note first there is nothing on the record to suggest that the district court's finding is clearly erroneous. Further, even if Santos were able to show that Francelina could only have returned to the Azores after the conclusion of World War II in 1945, that is still insufficient to prove that he met the requirements for derivative citizenship. Again, he must show that Francelina remained in the United States until at least 1946.